## HITCHENS AND WIFE *v.* NOUGUES *et al.*

Parties taking possession of a quartz lead under an agreement made with another party, cannot retain possession and refuse compliance with their agreement made in consideration of such possession and right to the lead.

And where such parties conveyed to H one-third interest in the lead, by deed purporting to convey in fee simple absolute, and subsequently acquired other title: *Held,* that such subsequent acquisition of title inured to H's benefit.

APPEAL from the District Court of the Eleventh Judicial District, County of El Dorado.

A statement of the facts sufficiently appears in the opinion of the Court.

*Coffroth & Hewes* for Appellants.

I. The judgment is unsustained by the evidence, and the decree is more than the complaint prayed for. The complaint asks an annulment of the contract, or specific performance. The new or large mill, and the railroad, are unknown to it. They are not directly or indirectly connected with it, but entirely separate and apart. The decree appropriates our property to another party, without even that party making a demand for it. But it may be said that this portion of the decree is deduced from the wording of the contract, which gives to Mary Hitchens one-third of the " money or property " which may arise from a certain state of facts ; but it will be perceived that this clause of the contract has a contingency, and that nothing is to flow to the interest of Mary, except where there should be an increase of shares, or " new and additional partners admitted," or a " joint stock company be formed." If either one of these contingencies should happen, and money, property, or profits should accrue therefrom, why, then she would be entitled to an interest equal to one-third share. These things did not exist. There were no additional partners admitted ; no joint stock company formed ; no increase of shares. The new mill was built alone by defendants, and by their money, and although it was used to crush the quartz taken from the lode in dispute, yet it was disconnected with and separated from, the quartz ledge. The testimony is that it was half a mile distant from the vein. The portable mill, or

" Cummings mill," is the only one recognized by the contract, and the only one to which the plaintiffs can lay claim. This mill was connected with, or near to the vein ; the new mill a half a mile distant. The old mill was of inferior value, and was, under the contract, an appendage to the quartz vein ; but to say that the new mill belonged to or was connected with the contract, is to say that simply because the defendants covenanted with plaintiffs, any other property the former might possess should be decreed to be divisional with Mary Hitchens. Hitchens paid nothing towards the erection of the new mill. Although present during the period of its building, he exercised no control over nor contributed a cent to its cost; and yet the decree appropriates to his wife one-third interest in it !

II. The Court erred in adjudging to plaintiffs one-third of the quartz mill. This assignment of error, with the third, possibly is the most potential against and the most fatal to respondents. This property was acquired independent of plaintiffs. It was built by the money of defendants. Its erection was at their entire cost; and so well convinced were the plaintiffs that it was defendants' sole property, that they do not even lay claim to it in their complaint ; yet the Court decrees them one-third of it ! It is unknown to the contract—it is foreign to the issue. It was and is the enterprise of defendants alone, and it was a violent thrust at their rights to decree an interest in it to other parties. The portable, or Cummings mill, belonged to the defendants, and plaintiffs had interest in the proceeds of the quartz crushed by it, in proportion to the extent of their interest in the vein, and no more. They could have no interest in the larger mill, and they do not claim an interest. We built both mills at our own cost.

The contract gives plaintiffs nothing but one-third interest in the vein. The mills and improvements are excepted. They could not claim them. The labor in mining the quartz and extracting the gold was the consideration given by defendants for plaintiff's interest in the vein. If it proved a lucrative business it would be continued, not otherwise.

III and IV. The third and fourth assignments of error may properly be united. The Court erred in adjudging plaintiffs entitled to one-third of the quartz ledge, and erred in adjudging them one-third

of the profits arising therefrom.  If they held but four-sevenths, as the Court finds, and as an inducement for us to enter into the contract represented themselves to be the proprietors of the entire vein, by what process of reasoning is the conclusion arrived at, that they should have one-third?  They owned but one-half the vein, and yet it is decreed that we shall give them back one-third, with all of our improvements.  And again, if they owned four-sevenths, what reasoning would give them one-third of the profits?  It is shown in the testimony that we purchased the other three-sevenths from other parties, although when the contract was entered into, from plaintiff's representations and from his deed, we were led to believe that he held the entire vein.  It was erroneous, then, to decree one-third of the profits and one-third of the vein.  They were entitled to their *pro rata* on four-sevenths, and no more.

V. The Court erred in compelling a specific performance of the contract on the part of defendants, when the proof shows that plaintiffs had not fulfilled their obligations.  The plaintiffs sold to defendants the entire vein.  It is true that the deed of conveyance says " all the right, title and interest " of John Hitchens, yet the representation he made was that he was the entire proprietor.  (See Dickson's Ev., p. 27)  The entire testimony leads to the conclusion that he held out the false representation of entire proprietorship.  Defendants, then, must be looked upon, by every rule, as innocent purchasers without notice.  The records did not disclose proprietary interest in any other party.  The defendants were thus forced to put confidence in plaintiff's representations; and upon the statement of Hitchens, entered into the contract.  The Court finds that Hitchens was not the owner of the vein, " but only four-sevenths," and that " the other three-sevenths were owned by" other parties.  Hitchens gave us, then, under the finding of the Court, but four-sevenths, and we under the contract are to give his wife one-third of the whole !  Or in other words, we are to erect a mill and improvements, in consideration of his permitting us to enjoy what he does not possess !  Does it not at once suggest itself that the false representations of plaintiffs led defendants into the contract ?  Then, has Hitchens complied with the contract, and has he given us a title to, and possession of the lead he sold to us under his

deed of September 15, 1858? We say he has not; and if we have, as we think we have, clearly demonstrated this to the Court, he is estopped from demanding from us a specific performance of the contract; and the Court consequently erred in thus decreeing. The authorities are strongly in our favor. In Bailey's Equity, vol. 1, p. 373, Doar *v.* Gibbs, the doctrines laid down fully sustain us. Again, in Kentucky, Littell, vol. 4, p. 255, Mason *v.* Chambers. In vol. 7, of Kentucky Reports, (J. J. Marshall) p. 370, Grundy *v.* Edwards, the Court says:

" Applications to the Chancellor for the specific enforcement of contracts are always addressed to his discretion, and he will rarely, if ever, in the exercise of that discretion, extend relief in such cases to any one who has willfully violated an essential part of the agreement which constituted an inducement to the purchase."

We were induced to purchase from the representation of Hitchens that he was full proprietor, and the title to the whole vein was an " essential part of the agreement." This doctrine is broadly laid down in Story's Equity Jurisprudence, vol. 2, p. 51, sec. 736 : p. 91, sec. 769; p. 96, sec. 771; and p. 102, sec. 776. And again, it is fully asserted in Willard's Equity Jurisprudence, pp. 286 and 287 ; and again, in the same work, pp. 296 and 297, the principle is positively asserted.

*Sanderson and Newell* for Respondents.

1st. The judgment of the Court below is fully sustained by the testimony, and the relief granted is not greater than the case made by the testimony entitled the plaintiffs to receive. The prayer for relief in the bill is ample enough to cover all that is given by the judgment; but were it not, it could make no difference, for this has decided that where the parties are in Court, and a trial is had, it is the duty of the Court to grant all the relief to which the parties are entitled under the case made by the testimony.

2d. Although respondent did not own but four-sevenths of the lode, yet appellants knew that fact, and knew that the other three-sevenths had been abandoned by their owners. They then purchased with full knowledge of all the facts, as the Court below found.

3d.   There is no force in the position that the appellants were compelled to purchase the three-fourths owned by other parties.   Nougues never dreamed of purchasing them until after this action was commenced, and then *only agreed to pay for them in the event he should be successful in this action.*

4th.   That the respondents were entitled to a conveyance of one-third of the whole lode, and to an account and their share of the profits, there can be no doubt.

The only question about which there can be any difference of opinion is, whether they are entitled to one-third of the mill and railroad; and to determine this, a careful examination of the contract is only necessary.

Under this contract, the only mill the appellants were required to put upon the "lead" was the "Cummings portable mill," which they owned and had in operation in the neighborhood.   This once upon the lead, of course became the property of both appellants and respondent Mary Hitchens.   They never put it on the lead, but instead thereof put up the present mill.   The fact that they more than performed their contract, or performed it in a manner and at a cost not required by the contract, can in no respect change the legal effect of the contract.   From this it follows, that if the portable mill would have become the property of the concern, the present mill would also.   The contract provides the respondent, Mary Hitchens, shall share in all property, and money, and advantages arising from the prosecution of the business.   The erection of a mill, building of a railroad, &c., were the very things which the respondent Hitchens was unable to accomplish, and the very consideration which moved him to make the contract, and for which he gave two-thirds of the lead, then believed to be of *immense* value.

BALDWIN, J., delivered the opinion of the Court—FIELD, J., concurring.

This was an equity proceeding, brought by respondents for a recission of a contract made by Hitchens with the defendants in regard to a certain mining claim, or for a specific execution of the contract, with which is connected a prayer for account.   The case was tried by the

judge on bill, answer and proofs, and a decree rendered in favor of the complainants. No demurrer was filed. The contract was made with Hitchens, who, it would seem, was the owner, or contracted as the owner of the premises sold to the defendants. There appears to be an evident incongruity in the bill, in this : That complainants, Hitchens *and wife,* sue to set aside or rescind the contract made by *Hitchens alone* with defendants. Hitchens, at the time of making the contract, being solely interested in the subject of the contract, and yet Hitchens and wife assert the right of the wife to enforce the contract *as made,* the wife deriving her right to intervene from the fact that, by the contract and the deed executed under, or as a part of it, she was entitled to a certain portion of the property sold, and a share of the profits of the business of mining proposed to be carried on afterwards. In consideration of the deed of Hitchens to defendants, they conveyed to Mrs. Hitchens one-third of the mining claim described in the bill, and they also agreed to account in a certain manner with her for the profits arising from working the claim. In one aspect of this claim, it is apparent that Mrs. Hitchens would not be interested as a plaintiff; in the other she would. But, as this point was not taken by demurrer, or in any other form on the trial, we will proceed to consider the case as the District Court considered it, *viz :* as a bill for specific performance. The case is simple and without difficulty. The record shows that Hitchens claimed and was in possession of a mining claim or quartz lode, in the county of El Dorado ; that he entered into a written contract with Nougues and Smith, by which he purported to sell to them all his right, title and interest in this claim. In consideration of this conveyance and contract, Nougues and Smith executed an instrument under seal, on the 15th of September, 1857, whereby they granted, bargained and sold to Mrs. Hitchens, and her heirs and assigns forever, one-third part of the premises in dispute ; this deed is averred to be in consideration of a sale and transfer by deed and delivery of possession of the right, title and interest of John Hitchens of this claim, and also a nominal consideration of five dollars from Mrs. Hitchens to the grantors. The Court especially find that, under and by virtue of Hitchens' conveyance to the defendants, they took possession of the claim. The deed proceeds as follows :

" And we, the said parties of the first part, for ourselves, our heirs, executors, administrators and assigns, in consideration aforesaid, do covenant, stipulate and agree, with and to the said party of the second part, her heirs, executors, administrators and assigns, that the said parties of the first part will erect, establish, and put in operation, within twenty days from the date of these presents, upon said quartz lode, a quartz crushing mill which is now owned by said parties of the first part, and at work near the village of Kelsey, being a two stamp mill, known as Cummings' Portable Mill, and that said parties of the first part will run said mill diligently, crushing quartz from said lode, and manage and conduct the same in a prudent and economical manner, and will pay over to the said party of the second part one-third part of the neat proceeds of said mill, after paying out of the gross yield all expenses necessarily incurred in procuring quartz and crushing the same, which payment of one-third of the neat proceeds as aforesaid to said party of the second part shall be made at each and every washing or cleaning up of gold at said mill. And the said party of the second part shall have the right and privilege, at any and all such washings or cleaning up, of being present either in person or by agent, for the purpose of inspecting and ascertaining the amount of such yield, and shall at any and all reasonable times have access to the books of the concern, and may examine said parties of the first part, or either of them, or their agent or clerk, on oath, respecting the condition of the accounts of the concern."

" It is further covenanted, stipulated and agreed by the said parties of the first part, for themselves, their heirs, representatives and assigns, with and to said party of the second part, her heirs, representatives and assigns, that should there be at any time an increase of shares of stock in said quartz lode, or should new and additional partners be admitted into the concern, or should a joint stock company be formed for the purpose of improving and working said quartz lode, that in any such case said party of the second part is to share in the advantages and profits of any and all such arrangements with said parties of the first part, in proportion to their several interests. And if in any such case money or property is realized by reason of such arrangement, said party of the second part shall be entitled to and shall have one-third of such money or property."

" And said parties of the first part further covenant and stipulate with and to the said party of the second part, her heirs, representatives and assigns, that said business shall be carried on and conducted for the benefit of the said several parties to these presents, as aforesaid, in a fair and economical manner, without incurring any unnecessary expense or outlay in conducting the same."

" In witness whereof, we, the said parties of the first part, have hereunto set our hands and seals, this day and year first above written.

" J. M. SMITH,  [L. s.]

" Jos. NOUGUES, [L. s.]"

" Witness : EARL S. POWERS."

Smith and Nougues, after going into possession, gave, by advertisement, notice to all persons concerned, that they would sell the shares in this claim, if payments were not made of the assessments due on such shares by the time of sale—10th January, 1858.   It is also found by the Court that Nougues and Smith did not, within twenty days after the date of the contract, nor at any time, erect the portable mill described in the agreement; but in lieu of it, proceeded to erect a large and costly mill, with eighteen stamps, without the consent of the plaintiff, except so far as that consent might be inferred from the knowledge of the latter that the mill put up was being built, and his making no objections thereto.   It appears, further, that at the date of the deed to defendants, Hitchens was the owner of only four-sevenths of the quartz lead ; but it was found that defendants knew at the time of the purchase that Hitchens had only this interest ; and that they took the risk of the other interests being forfeited or abandoned ; and it is further found that these outstanding claims were bought after this contract, and by the terms of the purchases they were only to be paid for if the defendants succeeded in this suit.   The defendants retaining the possession, refused to render any account, and claimed to hold the premises in their own right, unaffected by the stipulations of the contract.   The Court below rendered a decree declaring the right of the plaintiffs to enforce the contract, and for an account.   This decree is appealed from.

The Court below was clearly right upon the construction given to

the evidence after hearing the witnesses, who were not entirely agreed in their statements.   On looking over the proofs we are by no means satisfied that the Court below erred in its conclusion of facts ; but as there was some conflict in the testimony, we are not disposed to interfere, unless it is clear that the District Judge, whose opportunities for judging the value of, and weighing correctly the evidence, are better than ours, erred in his decision upon it.

The defendants, having taken possession under Hitchens, cannot retain that possession, and refuse compliance with their agreement made in consideration of such possession and right to it.   This is a plain, and, we believe, almost universal principle of law.   But beyond this, it seems that the defendants only contracted, not for the title to the premises, but for the right and interest of Hitchens ; and this they got ; and still more, by force of this possession, doubtless, they were able to acquire, for what is equivalent to little or nothing, the outstanding interests ;   for not getting which immediately from Hitchens they claim a right to refuse performance of their covenants. Nougues is evidently estopped by his deed (and Smith, too, if he executed the deed, and we think he did in effect, for he says in his answer that the deed is sufficiently executed to pass title to Mrs. Hitchens)

It follows, therefore, that under the statute of 1855, whether Nougues and Smith had title or not, at the time of their deed to Mrs. Hitchens, having conveyed to her by deed purporting to convey in fee simple absolute, their subsequent acquisition of title inured to her benefit.

The only question about which there can be any doubt is whether, as Nougues and Smith did not put up the sort of mill intended in the contract, but another and more costly one, if it appeared on the final hearing that the complainant has made or lost by this change, or if she did or did not assent to it, whether the proper expenditure for this, or the value of its use, or the injury for not putting on the premises the mill stipulated for, should be taken into the estimate in settling the account.   But this matter can be better determined on the final settlement of the accounts when the facts are more fully developed.

The judgment is affirmed.